```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SPIRIT REALTY, L.P.,                          :

                                              :   OPINION AND ORDER
                    Plaintiff,                    15 Civ. 5304 (GWG)
                                              :

     -v.-
                                              :

GH&H MABLETON, LLC,                           :

                                              :

                    Defendants.               :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Spirit Realty, L.P., formerly known as Cole Operating Partnership II, L.P. ("Spirit Realty"), brought this action against Defendant GH&H Mableton, LLC ("GH&H") seeking a declaration that Spirit Realty is not liable for the full amount of a loan held by GH&H and related indemnity agreement or, in the alternative, reformation of the indemnity agreement on grounds of mutual mistake. See Complaint, filed July 9, 2015 (Docket # 3) ("Complaint") at 9. GH&H filed a counterclaim alleging that Spirit Realty breached the indemnity agreement. See Answer and Counterclaim of GH&H Mableton, LLC, filed Sept. 18, 2015 (Docket # 10) ("Answer") at 6-7.

Plaintiff has now moved for summary judgment; in response, GH&H moved to voluntarily dismiss its counterclaim.[1] For the reasons stated below, the Court dismisses Spirit

---

[1] See Plaintiff's Motion for Summary Judgment, filed June 6, 2016 (Docket # 38) ("Pl. Mot."); Defendant's Response to Plaintiff's Motion for Summary Judgment, filed June 29, 2016 (Docket # 39) ("Response"); Notice of Cross Motion, filed June 29, 2016 (Docket # 40) ("Notice"); Motion to Allow Voluntary Dismissal Without Prejudice of Counterclaim, filed June 29, 2016 (attached as Attachment # 1 to Notice) ("Mot. to Dismiss Countercl."); Plaintiff's Reply in Support of its Motion for Summary Judgment, filed July 15, 2016 (Docket # 45) ("Pl. Reply"); Plaintiff's Limited Objection to GH&H Mableton's Motion to Allow Voluntary Dismissal Without Prejudice of Counterclaim, filed July 15, 2016 (Docket # 46) ("Limited Objection"); Defendant's Reply in Support of its Motion to Allow Voluntary Dismissal Without

Realty's action and grants GH&H's motion to voluntarily dismiss its counterclaim.

I.  BACKGROUND

The following facts are undisputed.

A.  The Loan Agreement and Indemnity

This case centers on a commercial real estate loan made in July 2007 by Bear Stearns Commercial Mortgage, Inc. to a predecessor of Spirit EK Mableton GA, LLC, f/k/a Cole EK Mableton GA, LLC ("Spirit LLC"). Declaration of Sean Hufford in Support of Plaintiff's Motion for Summary Judgment ("Hufford Decl.") (attached as Ex. A to Statement of Facts in Support of Plaintiff's Motion for Summary Judgment ("Statement of Facts") (attached as Ex. 1 to Pl. Mot.)) ¶¶ 10-11; Loan Agreement (attached as Ex. B to Statement of Facts) ("Loan Agreement").[2]  The loan, in the original amount of $1,197,000.00, was secured by a lien and security interest in a commercial property at 4637 Hicks Road SW, Mableton, GA.  Hufford Decl. ¶ 12; Deed to Secure Debt and Security Agreement (attached as Ex. D to Statement of Facts).  Spirit LLC is a single purpose entity that exists solely to own and operate this property. Complaint at ¶ 12; Response at 2.  The loan was eventually assigned to GH&H.  See Answer ¶¶ 27, 63-65; Hufford Decl. ¶¶ 27-31; see also Loan Purchase Agreement, dated May 19, 2015 (attached as Ex. F to Statement of Facts) ("Loan Purchase Agreement"); Assignment and

---

Prejudice of Counterclaim, filed July 21, 2016 (Docket # 48) ("Def. Reply").

[2] The original loan was made to "Cole EK Mableton, GA, LLC."  Hufford Decl. ¶ 10; Loan Agreement; Promissory Note (attached as Ex. C to Statement of Facts).  The Indemnity was originally subscribed to by Cole EK Mableton GA, LLC and Cole Operating Partnership II, LP.  Hufford Decl. ¶¶ 10, 13; Indemnity Agreement (attached as Ex. E to Statement of Facts) ("Indemnity").  The "indirect parent company" of both of these entities, Cole Credit Capital Trust II, Inc., merged with a company called Spirit Realty Capital, Inc. in July 2013.  Hufford Decl. ¶¶ 22-23.

Assumption of Loan Documents, dated May 20, 2015 (attached as Ex. G to Statement of Facts).

The loan was structured as a "non-recourse" loan, meaning that if Spirit LLC defaulted, the lender's recovery would be presumptively limited to the value of the property and the lender's right to foreclose. Hufford Decl. ¶ 15; Loan Agreement §§ 8.2, 9.3. Certain exceptions applied, however. If Spirit LLC committed what the parties call "bad boy" acts — such as fraud, willful misconduct, breach of representations or warranties, or conversion of insurance proceeds — Spirit LLC would be fully liable to the lender. See Hufford Decl. ¶ 18; Loan Agreement § 9.3. Also, Spirit LLC would become liable if a "full recourse event" occurred. Hufford Decl. ¶ 19; Loan Agreement § 9.3. Such an event occurred if Spirit LLC filed a voluntary bankruptcy petition; colluded to file an involuntary bankruptcy petition; consented to a custodian, receiver, or trustee (other than at the request of the lender); made an assignment for the benefit of creditors; or admitted, "in writing or in any legal proceeding," that it is insolvent or unable to pay its debts as they become due. Id.

To induce Bear Stearns to make this loan, Spirit Realty, a Delaware limited partnership doing business in Arizona, signed an indemnity agreement on or about July 19, 2007, benefitting Spirit LLC. See Hufford Decl. ¶ 13; Indemnity. The Indemnity provided that the lender on the Loan Agreement would have recourse against Spirit Realty if Spirit LLC became liable for more than the value of the mortgaged and secured property — that is, for "bad boy" acts or a "full recourse event." See Hufford Decl. ¶ 20; Indemnity §§ 1-2.

B. Procedural History

On June 19, 2015, Mark O. Hackner, a representative of GH&H, emailed Sean Hufford, Spirit Realty's Vice President of Asset Management, stating that "[I]t looks like we will be going through the process of calling the guaranty. Letter to be sent next week." Hufford Decl.

¶¶ 3, 32; Email from Mark O. Hackner to Sean Hufford, dated June 19, 2015 (attached as Ex. H. to Statement of Facts) ("Call Email").  GH&H's responses to interrogatories suggest that they believed Spirit LLC stopped making payments on the loan; had "total expenses" in March 2014 of $11,160, and "total revenues" of $0; and that Sean (presumably Hufford) previously told Hackner that Spirit LLC "has no assets."  See Supplemental Discovery Responses of Defendant GH&H Mableton, LLC, dated Mar. 15, 2016 (attached as Ex. J to Statement of Facts) at 3-4; see also Email from Mark O. Hackner to Bill Gryboski, dated June 9, 2015 (attached as Ex. 7 to Excerpts from Transcript of William E. Gryboski Mar. 22, 2016 Deposition (attached as Ex. K to Statement of Facts) ("Gryboski Tr.")); Income Statement, Spirit EK Mableton GA, LLC, dated May 13, 2014 (attached as Ex. 8 to Gryboski Tr.).

    On July 8, 2015, Spirit Realty filed its complaint containing two claims: (1) a claim seeking a declaration that it is not fully liable for the amount owing under the loan; and (2) a claim seeking "reformation" of the Indemnity to make clear that a "mere monetary event of default" could not create liability for Spirit Realty.  See Complaint ¶¶ 37-51.  GH&H filed a counterclaim alleging that Spirit Realty had breached the Indemnity by "fail[ing] to meet its repayment obligations."  See Answer ¶ 68.

    After discovery, Spirit Realty filed a motion for summary judgment.  See Pl. Mot.  Instead of opposing this motion, GH&H filed a response accepting Spirit Realty's interpretation of the contract and admitting that Spirit Realty is not currently liable under the Indemnity.  See Response at 3 ("To the extent that Plaintiff seeks a declaration that [Spirit Realty is not currently liable to GH&H] . . . . Defendant does not object to it.").  GH&H simultaneously filed a motion to voluntarily dismiss its counterclaim without prejudice.  See Mot. to Dismiss Countercl. at 1.  Spirit Realty responded that the counterclaim should be dismissed with prejudice.  See Limited

Objection at 1.  It also sought attorney's fees.  See id. at 1-2, 7-9.

After completion of the initial round of briefing, the Court requested briefing on the question of "whether this Court has subject matter jurisdiction to issue the requested declaratory judgment and, assuming arguendo it has such jurisdiction, whether the Court should exercise its discretion to issue a declaratory judgment."  See Order, filed Sept. 23, 2016 (Docket # 50).  Both parties submitted memoranda of law in response.  See Plaintiff's Brief in Support of Subject Matter Jurisdiction and Request for Entry of Declaratory Judgment in Favor of Plaintiff, filed Oct. 7, 2016 (Docket # 51) ("Pl. SMJ Br."); Defendant GH&H Mableton, LLC's Memorandum of Law Regarding the Court's Lack of Subject Matter Jurisdiction, filed Oct. 7, 2016 (Docket # 52) ("Def. SMJ Br."); Plaintiff's Response to Defendant GH&H Mableton, LLC's Memorandum of Law Regarding the Court's Lack of Subject Matter Jurisdiction, filed Oct. 21, 2016 (Docket # 53) ("Pl. SMJ Reply"); Defendant GH&H Mableton, LLC's Response Memorandum of Law Regarding the Court's Lack of Subject Matter Jurisdiction, filed Oct. 21, 2016 (Docket # 54) ("Def. SMJ Reply").

II.   DISCUSSION

    A.   Declaratory Relief Claim

        1.   Governing Law

Declaratory relief is available as a remedy only if an "actual controversy" exists between the parties.  28 U.S.C. § 2201(a); accord In re Refco Inc. Sec. Litig., 826 F. Supp. 2d 478, 498-99 (S.D.N.Y. 2011) (citing United States v. Doherty, 786 F.2d 491, 498-99 (2d Cir. 1986)).  This limitation is consistent with Article III of the United States Constitution, which restricts the power of the federal courts "to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citation omitted).

The determinative issue is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941); accord Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993).  This standard is "conceptually linked to the doctrine of ripeness, requiring that the claim of threatened injury be of direct and immediate impact and the injury sufficiently likely to occur, so as to render the issue appropriate for judicial review." Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 407 (S.D.N.Y. 2002) (citations omitted), aff'd, 346 F.3d 357 (2d Cir. 2003) (per curiam).  The doctrine of mootness also applies because "[i]t is not enough that there may have been a controversy when the action was commenced if subsequent events have put an end to the controversy." Mailer v. Zolotow, 380 F. Supp. 894, 896-97 (S.D.N.Y. 1974) (citing 10 C. Wright & A. Miller, Federal Practice and Procedure § 2757 at 766-67 (1973 ed.)); accord Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").

In the context of an action for a declaratory judgment, a court may not issue such a judgment "when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." Flast v. Cohen, 392 U.S. 83, 95 (1968) (footnotes and citations omitted); accord Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc., 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012).

Even where an actual controversy exists, the Declaratory Judgment Act gives a court discretion to decline jurisdiction.  See 28 U.S.C. § 2201(a) ("In a case of actual controversy

within its jurisdiction . . . [a court] may declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added).  As the Supreme Court has noted, the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. . . .  In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).  When making this determination, courts in the Second Circuit consider:

> (I) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

N.Y. Times Co. v. Gonzales, 459 F.3d 160, 167 (2d Cir. 2006) (quotation marks omitted) (citing Dow Jones, 346 F.3d at 359-60).

        2. Analysis

As noted, Spirit Realty can obtain a declaratory judgment only if an actual case or controversy exists between the parties, both at the time the complaint was filed and currently.  Here, the original basis for Spirit Realty's claim — a one-line email stating that GH&H "will be going through the process of calling the guaranty," see Call Email — was arguably insufficient to show the "substantial controversy" required to issue a declaratory judgment, given its implication that some "process" would be engaged in before any action would be taken on the guaranty.

In any event, whether or not a controversy existed between the parties in June 2015, none exists now.  The defendant has not disputed Spirit Realty's contention that it is only liable, and

would only have been liable, to GH&H under the Indemnity if a "bad boy" act or full recourse event occurred. Statement of Facts ¶¶ 12-14; Response at 2-3; Defendant's Response to Plaintiff's Statement of Facts in Support of its Motion for Summary Judgment (attached to Response) ¶¶ 12-14. The defendant does not contend that either type of event has occurred, has not opposed the motion for summary judgment, and agrees that Spirit LLC has not to date "admitted in writing or in any legal proceeding its insolvency or inability to pay its debts as they become due." Response at 3. Because there is no controversy between the parties, this Court does not have the power to issue a declaratory judgment. See, e.g., Flast, 392 U.S. at 95 (court may not issue declaratory judgment "when the question sought to be adjudicated has been mooted by subsequent developments").

 Two cases bolster this conclusion. In In re Refco Inc. Sec. Litig, plaintiffs sought a declaration that certain defendants were not entitled to indemnity under a service agreement. 826 F. Supp. 2d at 498. One of the defendants moved to dismiss the declaratory relief claim on the ground that he "ha[d] not asserted and [was] not seeking any indemnification." Id. Noting that this admission would estop that defendant from bringing an indemnity claim related to that action, the court found that "there is no controversy . . . and declaratory relief is not proper." Id. at 499. Similarly, in Harbor Distrib. Corp. v. GTE Operations Support Inc., 176 F. Supp. 3d 204 (E.D.N.Y. 2016), a lessee's attorney informed the lessor that the lessee intended to terminate the agreement between the parties "but that it was not something that would occur in the immediate future." Id. at 208. Concerned that the lessees would nevertheless end the lease prematurely, the lessor sued for a declaration that, pursuant to the terms of the lease, no right to terminate existed. Id. at 208-09. The lessees represented, in oral argument and in opposition papers, that they did not seek to terminate the lease and did not believe they could do so under

8

the contract at that time.  Id.  The lessees then moved to dismiss, and the Court granted the motion, acknowledging that "[a]t the moment, both parties agree that the conditions necessary for termination of the lease have not been satisfied and, therefore, the lease cannot be terminated."  Id. at 211-12.  The circumstances of both In re Refco and Harbor Distrib. Corp. parallel what occurred here.

Spirit Realty argues that these cases are distinguishable because GH&H did not move to dismiss Spirit Realty's claims nor admit in its answer that Spirit Realty was "not in default."  Pl. SMJ Br. at 9.  But whether the admission came in an initial response or in the form of a later statement is of no moment; GH&H has now made an admission reflecting that there is no controversy between the parties.  See, e.g., Def. SMJ Reply at 3 ("Plaintiff is not liable to the Defendant as none of the liability 'triggering events' set forth in the guaranty have occurred.").  This admission is binding on GH&H and is as effective as the admissions in In re Refco and Harbor Distrib. Corp.[3]

Even if this Court could exercise jurisdiction over Spirit Realty's request for declaratory relief, it would decline to do so as a matter of discretion.  The first and second factors in Dow Jones weigh strongly against issuing a declaratory judgment and the remaining factors do not apply.  Both parties agree that a future breach of the Indemnity could make Spirit Realty liable to GH&H, and that claims are not forever barred under that agreement.  See Pl. SMJ Br. at 9 n.4;

---

[3] Spirit Realty's reliance on D.B. Zwirn Special Opportunities Fund, L.P. v. SCC Acquisitions, Inc., 74 A.D.3d 530 (1st Dep't 2010), see Pl. SMJ Br. at 8; Pl. SMJ Reply at 2, is misplaced, because that case addresses only the issue of what counts as a "written admission of insolvency" under New York law.  D.B. Zwirn, 74 A.D.3d at 531-32.  This case has no bearing on whether a controversy now exists between the parties.

Def. SMJ Br. at 7.[4]  GH&H has even accepted Spirit Realty's interpretation of the "triggering event" at issue in this case.  See Def. Reply at 3-4.  Both parties thus agree (1) that Spirit Realty is not currently liable to GH&H; (2) that it could be liable to GH&H in another set of circumstances; and (3) on the terms under which Spirit Realty would become liable to GH&H.  Thus, a declaratory judgment at this stage would not settle a controversy between the parties nor would it serve a "useful purpose" in clarifying the legal relations in issue.

In sum, Spirit Realty's claim for a declaratory judgment is dismissed.[5]

### B. GH&H's Motion to Dismiss its Counterclaim Without Prejudice

#### 1. Law Governing Voluntary Dismissal

Where, as here, a plaintiff has answered a counterclaim or filed a motion for summary judgment, the counterclaim may be dismissed at the defendant's request only "by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(1), (a)(2), (c).  The Second Circuit has identified "[t]wo lines of authority" that are used to determine whether a dismissal without prejudice rather than with prejudice might be improper:

> One line indicates that such a dismissal would be improper if "the [party against whom the claim is asserted] would suffer some plain legal prejudice other than the mere prospect of a second lawsuit."  Cone v. West Virginia Pulp & Paper Co.,

---

[4] Spirit Realty asserts that the property has now been sold and that this terminates GH&H's right to seek indemnity.  Pl. Reply at 3-4.  We do not examine the accuracy of this claim because it was raised for the first time in a reply brief and GH&H did not have a chance to respond to it.

[5] For the first time, Spirit Realty also requests a "narrowly tailored" declaratory judgment "to prevent Defendant from attempting to initiate the exact same action in another forum, were this case to be dismissed."  Pl. SMJ Br. at 6.  This relief was not requested in the complaint and will not be considered at this late stage in the case.  In any event, the relief would be denied because it represents speculation as to a future controversy, not an actual controversy between the parties.  It is also denied because it is unnecessary: as described in the next section, GH&H's claim is being dismissed with prejudice as to events that preceded June 29, 2016.

> 330 U.S. 212, 217, 67 S. Ct. 752, 91 L. Ed. 849 (1947); see Jones v. SEC, 298 U.S. 1, 19, 56 S. Ct. 654, 80 L. Ed. 1015 (1936).  Another line indicates that the test for dismissal without prejudice involves consideration of various factors, known as the Zagano factors, including (1) the . . . diligence [of the party asserting the claim] in bringing the motion, (2) any undue vexatiousness on [that party's] part, (3) the extent to which the suit has progressed, including the . . . efforts and expense [of the party defending the claim] in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the . . . explanation [of the party bringing the claim] for the need to dismiss. See D'Alto v. Dahon California, Inc., 100 F.3d 281, 283 (2d Cir.1996); [Zagano v. Fordham University, 900 F.2d 12, 14 (2d Cir. 1990)].

Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006).

    2.  Analysis

In this case, there would appear to be no practical difference in the effect of a "with prejudice" as opposed to a "without prejudice" dismissal.  GH&H has admitted that to date Spirit Realty has not engaged in an act triggering the Indemnity obligation and thus GH&H would be judicially estopped from arguing otherwise were it to re-file the counterclaim as a new lawsuit. See generally New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (alteration in original) (internal quotation marks and citation omitted); see also Fed. R. Civ. P. 11(b) (requiring that factual contentions and legal arguments be properly supported).

Nonetheless, the Court will address the question of the nature of the dismissal inasmuch as Spirit Realty has objected to a "without prejudice" dismissal.  Examining the prejudice to plaintiff first, as called for in Cone, Spirit Realty does not identify any future prejudice other than the possibility of a second lawsuit.  The only prejudice it identifies is past prejudice: that it incurred attorneys' fees and other costs in the past preparing to defend against the claim,

11

including a deposition and other discovery and the filing of a summary judgment motion. See Limited Objection at 3 n.3. The "plain legal prejudice" referred to in Cone, 330 U.S. at 217, however, is the prejudice that would result from a "without prejudice" dismissal — that is, prejudice that would inure to Spirit Realty's detriment in the future. See id. (citing Pleasants v. Fant, 89 U.S. (1 Wall.) 116, 122 (1874), and Jones, 298 U.S. at 19, 20). Thus, Spirit Realty's request fails under Cone.

Turning to the first Zagano factor, the Court finds that GH&H acted with acceptable diligence in bringing its motion for voluntary dismissal. GH&H brought its motion to voluntarily dismiss its counterclaim at the close of discovery, after less than a year, and once it determined that it could not prove a full recourse event actually occurred. See Def. Reply at 3-4. Spirit Realty contends that it should not have engaged in discovery in the first place because it should have been obvious that Spirit Realty was not liable under the Indemnity. See Limited Objection at 3. But it never contended that the allegations of the counterclaim violated Fed. R. Civ. P. 11 and it is unclear how GH&H acted unreasonably in pursuing this issue. Before it filed its counterclaim, GH&H was apparently informed that Spirit LLC "has no assets," and GH&H obtained an income statement showing that Spirit LLC had a large net loss in the first quarter of 2014 and no income in March 2014. See Email from Mark O. Hackner to Bill Gryboski, dated June 9, 2015 (attached as Ex. 7 to Gryboski Tr.); Income Statement, Spirit EK Mableton GA, LLC, dated May 13, 2014 (attached as Ex. 8 to Gryboski Tr.). There was thus some colorable basis for GH&H to conclude that Spirit LLC might have elsewhere admitted in a writing or legal proceeding that it was insolvent. More importantly, it was Spirit Realty that brought this action, not GH&H. There is no evidence at all that the filing of the counterclaim caused any prejudice to Spirit Realty given that the counterclaim mirrored its claim for a declaratory judgment. Once

Spirit Realty sought summary judgment on that claim, GH&H offered no opposition.

The second Zagano factor is undue vexatiousness on the part of the moving party.  Undue vexatious exists when the party had "ill motive," such as when a party files duplicative actions relating to the same injury, Mondejar v. Dow Chem. Co., 1998 WL 812577, at *3 (E.D.N.Y. Apr. 29, 1998), or when a party assures the court and defendants that they would pursue the claim, then seeks dismissal, see Shaw Family Archives, Ltd. v. CMG Worldwide, Inc., 2008 WL 4127549, at *6 (S.D.N.Y. Sept. 2, 2008) (citing Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc., 2005 WL 578916, at *5 (S.D.N.Y. Mar. 11, 2005)).  Spirit Realty argues that "ill-motive" made GH&H wait until after the close of discovery, while Spirit Realty prepared its motion for summary judgment, to decide to dismiss its claim.  Limited Objection at 4.  GH&H argues it was prepared to fully pursue its counterclaim until it determined from discovery that a claim had not yet developed under the Indemnity.  Def. Reply at 4.  There is no basis on which to discount this assertion.  Accordingly, Spirit Realty has not made an affirmative showing that GH&H acted out of "ill motive."

The third Zagano factor is the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial.  This factor weighs in favor of Spirit Realty given that the case was nearly concluded when the motion to dismiss was made.  See, e.g., Comunidad Autónoma Del País Vasco v. Am. Bureau of Shipping, Inc., 2006 WL 2254958, at *3 (S.D.N.Y. Aug. 4, 2006) (citing D'Alto, 100 F.3d at 283).

The fourth Zagano factor looks to the duplicative expense of relitigation.  Obviously, it would be unfair to Spirit Realty if GH&H could bring a new action identical to the counterclaim.  As already noted, however, there is no possibility of relitigation on the current factual record given GH&H's admission that no recourse event had occurred as of the time of the briefing.

13

Obviously, litigation is possible if a full recourse event occurred in the future, as GH&H admits. Def. Reply at 4. In such an event, Spirit Realty could use the legal work and discovery material it completed during this action to defend itself. A.V. by Versace, Inc. v. Gianni Versace S.p.A., 261 F.R.D. 29, 33 (S.D.N.Y. 2009); Banco Central de Para. v. Para. Humanitarian Found., 2006 WL 3456521, at *6-7 (S.D.N.Y. Nov. 30, 2006).

The final Zagano factor is the adequacy of the explanation for the need to dismiss. Here, GH&H has explained that it does not have a basis for concluding that Spirit Realty violated the Indemnity. See Def. Reply at 5.

Although some factors favor GH&H, the Court agrees that "a party should not be permitted to avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice." Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004) (citations omitted). While it does not appear that GH&H seeks to preserve claims that accrued before June 29, 2016, this principle weighs in favor of dismissal with prejudice. In Akzona Inc. v. E.I. du Pont de Nemours & Co., 662 F. Supp. 603 (D. Del. 1987), after counsel for defendant asserted that it would not relitigate causes of action prior to a certain triggering date, the court dismissed its counterclaims with prejudice before that date, but without prejudice afterwards. See id. at 621. We believe that similar terms of dismissal here adequately balance the interests of both parties. Accordingly, the Court grants GH&H's motion to voluntarily dismiss its counterclaim with prejudice with respect to claims accruing before June 29, 2016 — the date it made the concession that Spirit Realty was not liable under the indemnity — and without prejudice with regard to claims arising after that date.[6]

---

[6] Where, as here, a court places terms and conditions on a motion for voluntary dismissal, the court should grant a litigant the opportunity to withdraw its motion should the

C. Costs and Attorneys' Fees

Spirit Realty seeks attorneys' fees and costs, either as a condition on the dismissal of GH&H's counterclaim without prejudice or because GH&H's counterclaim was "frivolous" under New York law. Limited Objection at 7-9; Pl. SMJ Br. at 10.[7] The Court denies Spirit Realty's applications under both arguments.

Spirit Realty is correct that, within the context of voluntary dismissal, "[c]ourts often grant fee awards when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2)." Jewelers Vigilance Comm., Inc. v. Vitale, Inc., 1997 WL 582823, at *4 (S.D.N.Y. Sept. 19, 1997) (emphasis omitted) (citing Colombrito v. Kelly, 764 F.2d 122, 133 (2d Cir. 1985); 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil 2d § 2366, at 305-06 (1995 ed.)), motion to vacate denied, 177 F.R.D. 184 (S.D.N.Y. 1998). "The purpose of such awards is generally to reimburse the defendant [in this case, the defendant to the counterclaim, Spirit Realty] for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." Colombrito, 764 F.2d at 133 (citations omitted) (emphasis added).

Here, such an award is inappropriate. First, the Court is not permitting a "without prejudice" dismissal for any claims already made in this case. An award of fees is not

---

litigant deem the terms too onerous. See Gravatt v. Columbia Univ., 845 F.2d 54, 56 (2d Cir. 1988); accord Mich. Surgery Inv., LLC v. Arman, 627 F.3d 572, 577 (6th Cir. 2010); Mar-Cone Appliance Parts Co. v. Mangan, 2012 WL 5906874, at *4 (W.D.N.Y. Nov. 7, 2012). Accordingly, if GH&H wishes to withdraw its motion for voluntary dismissal rather than accept the terms of dismissal in this Opinion and Order, it shall so state in a filing on ECF within five business days of the date of the issuance of this Opinion and Order.

[7] Spirit Realty has filed a motion for costs and fees as sanctions for discovery disputes. See Plaintiff's Application for Attorneys' Fees Under Fed. R. Civ. P. 37(a)(5)(A), filed July 11, 2016 (Docket # 44). This motion is addressed in a separate order.

appropriate when a claim is dismissed with prejudice, as there is no risk of future litigation on the same subject. See id.  While Spirit Realty faces the prospect of litigation for post-June 29, 2016, events, GH&H did not make any claim regarding such events in the instant lawsuit, and thus it is appropriate for Spirit Realty to bear the costs of any suit based on such events.  Fees are denied also because Spirit Realty has not shown that it incurred fees in defending the counterclaim over and above what it incurred in pursuing its own claim for a declaratory judgment and reformation of the contract.

Finally, plaintiff seeks fees under a provision of New York law relating to "frivolous" conduct.  Limited Objection at 7-8.  While this case arises under the Court's diversity jurisdiction, the Federal Rules of Civil Procedure apply, not New York's procedural rules, see generally Burlington N. R.R. v. Woods, 480 U.S. 1, 9 (1987); 10 Moore's Federal Practice § 54.171(5) (3d Ed.) ("Although a federal court must apply state substantive law in diversity actions, it must still apply federal procedural law, and the attorney's fee provisions of the federal rules are presumed to be procedural in nature.") — including the rule invoked by plaintiff, see Harris v. Coleman, 863 F. Supp. 2d 336, 345 (S.D.N.Y. 2012) ("[22 N.Y.C.R.R. § 130-1.1] is part of the Rules of the Chief Administrator of the New York State Courts governing judicial administration of the state courts, and is thus inapplicable to an attorney's conduct in federal court.").  To the extent Spirit Realty believes it is proceeding under Fed. R. Civ. P. 11, the application is denied for a number of reasons — most obviously because Spirit Realty did not comply with Rule 11(c)(2)'s "safe harbor" requirement and its instruction to file the motion separately from any other motion.  See, e.g., Castro v. Mitchell, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) (denying Rule 11 sanctions for failure to comply with the procedural provisions).  Additionally, GH&H's decision to pursue the case does not fit into any of the

prohibited categories listed in Rule 11(b).

D. Claim for Reformation

The complaint also contains a claim for reformation of the contract. See Complaint ¶¶ 44-51. Spirit Realty has not objected to dismissal of this claim. See Order, filed December 8, 2016 (Docket # 55) (providing notice that the claim would be dismissed absent objection). Accordingly, it will be dismissed.

CONCLUSION

For the foregoing reasons, all claims and counterclaims in this action are dismissed. Such dismissals are without prejudice, with the exception of any claim by GH&H against Spirit Realty arising out of events occurring on or before June 29, 2016. All other applications for relief are denied. Any pending motions are moot. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: January 2, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge